# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ACTUAL BREWING COMPANY, LLC, | Case No. 19-50813 |
| Debtor. | Honorable Charles M. Caldwell |

## MOTION OF EBP 2800 NORTH HIGH LLC AND AIRPORT PLAZA, LTD FOR RELIEF FROM THE AUTOMATIC STAY IN CONNECTION WITH CERTAIN LEASES

EBP 2800 North High LLC ("EBP") and Airport Plaza, Ltd. ("Airport Plaza" and, together with EBP, the "Landlords"), by their counsel, FROST BROWN TODD LLC, hereby move this Court (this "Motion") for entry of an order pursuant to 11 U.S.C. §§ 105(a) and 362(d), Federal Rule of Bankruptcy Procedure 4001, and Local Rule of Bankruptcy Procedure 4001-1 granting the Landlords relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code with respect to the Leases,[1] in order to allow the Landlords to exercise any and all of their rights and remedies under the Leases and applicable non-bankruptcy law with respect to the Leases, including proceeding with the State Court Actions. A Memorandum in Support of this Motion is attached hereto.

[*Signature page follows*.]

---

[1] Capitalized but undefined terms used herein have the meanings ascribed to them in the accompanying Memorandum in Support.

Dated: March 15, 2019

Respectfully submitted,

**FROST BROWN TODD LLC**

<u>/s/ Ronald E. Gold</u>
Ronald E. Gold, Esq.
Ohio Bar No. 0061351
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone: 513-651-6800
Facsimile: 513-651-6981
Email: rgold@fbtlaw.com

*Counsel for Airport Plaza Limited and
EBP 2008 North High, LLC*

## MEMORANDUM IN SUPPORT

### I.     BACKGROUND

1. On February 14, 2019 (the "Petition Date"), Actual Brewing Company, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Upon information and belief: (i) the Debtor is a craft brewery founded in 2012; (ii) prior to the Petition Date, the Debtor operated a production facility and tap room in Columbus, Ohio (the "Tap Room") and a brewpub restaurant in Clintonville, Ohio (the "Clintonville Restaurant"); and (iii) prior to or shortly after the Petition Date, the Debtor closed both the Tap Room and the Clintonville Restaurant.

2. Prior to the Petition Date: (i) the Debtor and EBP entered into a certain lease agreement dated September 30, 2016 (as amended, the "North High Lease") where the Debtor operated the Clintonville Restaurant; and (ii) the Debtor and Airport Plaza entered into a certain lease agreement dated February 22, 2016 (as amended, the "Airport Plaza Lease and, together with the North High Lease, the "Leases") where the Debtor operated the Taproom (together with Clintonville Restaurant, the "Leased Premises").

3. As a result of continuing defaults under the Leases, on November 30, 2018, the Landlords commenced two separate actions against the Debtor in the Franklin County, Ohio Municipal Court styled: (i) *EBP 2008 North High, LLC v. Actual Brewing Company LLC*, Case No. 18-CVG-043978; and (ii) *Airport Plaza Limited v. Actual Brewing Company LLC*, Case No. 18-CVG-043979 (collectively, the "State Court Actions").

4. EBP and the Debtor entered into an Agreed Entry dated January 25, 2019 (the "North High Agreed Entry"), attached hereto as Exhibit A, whereby EBP agreed to forego judgment and execution of a writ of restitution and the Debtor agreed to: (i) pay to EBP the amount of $35,942.09; (ii) pay and be current on all of its utilities obligations as they became due and payable at the Clintonville Restaurant; and (iii) pay and stay current with any outstanding escrow amounts and/or reconciled prior year expenses as they became due and payable under the North High Lease.

5. Airport Plaza and the Debtor entered into an Agreed Entry dated January 25, 2019 (the "Airport Plaza Agreed Entry" together with the North High Agreed Entry, the "Agreed Entries"), attached hereto as Exhibit B, whereby Airport Plaza agreed to forego judgment and execution of a writ of restitution and Debtor agreed to: (i) pay to Airport Plaza the amount of $117,838.80; (ii) pay and be current on all of its utilities obligations as they became due and payable at the Taproom; and (iii) pay and stay current with any outstanding escrow amounts and/or reconciled prior year expenses as they became due and payable under the Airport Plaza Lease.

6. Almost immediately after entry of the Agreed Entries, the Debtor failed or otherwise refused to comply with the North High Agreed Entry and the Airport Plaza Agreed Entry and failed or otherwise refused to pay to the Landlords their February 2019 payment obligations under the Leases. The Landlords notified the Debtor that they would exercise their rights under the Leases and applicable law and change the locks at both the Clintonville Restaurant and the Taproom and begin the process of liquidating the personal property in both the Clintonville Restaurant and the Taproom.

7.  In accordance with applicable Ohio law, the Landlords each promptly filed a praecipe for a writ of restitution and immediate set out, each attached hereto as <u>Exhibit C</u>, which the Franklin County Municipal Court entered on February 13, 2019. (collectively, the "<u>Writs</u>"). Immediately thereafter, the Debtor commenced this chapter 11 case and, upon information and belief, did so solely to hinder and delay the Landlords in their efforts to obtain rightful possession of the Leased Premises.

## II. JURISDICTION AND VENUE

8.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.

9.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

10. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

11. The statutory predicates for the relief requested herein are: (i) sections 105 and 362(d) of the Bankruptcy Code; (ii) Federal Rules of Bankruptcy Procedure (the "<u>Federal Rules</u>") 4001 and 9014; and (iii) Local Rules of Bankruptcy Procedure (the "<u>Local Rules</u>") 4001-1 and 9014-1.

## III. ARGUMENT

12. Pursuant to section 362(d)(1) of the Bankruptcy Code, the Landlords seek relief from the automatic stay so that the Landlords can proceed with the rights and remedies afforded to the Landlords under state law and the Leases including, but not limited to, proceeding with the State Court Actions and executing upon the Writs.

13. Section 362(d) of the Bankruptcy Code provides, in relevant part, that:

> (d) On request of a party in interest and after notice and a hearing, the court <u>shall</u> grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property…;
>
> (2) with respect to a stay of an act against property…, if: (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization….

11 U.S.C. § 362(d) (emphasis added).

14. Section 362 of the Bankruptcy Code is written in the disjunctive. Thus, relief from the automatic stay may be predicated, and the entry of relief is mandatory, upon a finding that either subsection is applicable. *See In re Sun Valley Ranches, Inc.*, 823 F.2d 1373, 1376 (9th Cir. 1987); *In re Indian Palms Assocs. Ltd. v. California Fed. Bank*, 61 F.3d 197, 208 (3d Cir. 1995) (finding that relief is mandatory, observing that the introductory language of § 362(d) provides that "the court shall grant relief.").

A. **The Landlords are entitled to relief from the stay pursuant to 11 U.S.C. § 362(d)(1) because the Landlords lack adequate protection and there is no possibility of a successful reorganization in this chapter 11 case.**

15. The Landlords are entitled to relief from the automatic stay in this chapter 11 case pursuant to section 362(d)(1) of the Bankruptcy Code, which entitles a party to relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define the term "for cause," and, instead, the automatic stay may be terminated for cause on a case-by-case basis. *In re Laguna*, 30 F.3d 734, 737 (6th Cir. 1994) ("Because the Code provides no definition of what constitutes 'cause' under either Section 362(d) or Section 1112(b), courts must determine whether discretionary relief is

-6-

appropriate on a case-by-case basis.") (*citing In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991).

16. The Bankruptcy Code cites "lack of adequate protection" as an example of "cause" justifying relief from the automatic stay pursuant to section 362(d)(1). Lack of adequate protection may be shown by "an erosion of the creditor's position or threatened erosion." *In re J & M Salupo Development Co., Inc.*, 388 B.R. 809 (Bankr. S.D. Ohio 2008).

17. Lack of adequate protection is only *one* example of "cause" under section 362(d)(1) of the Bankruptcy Code. *In re Laguna*, 30 F.3d 734, 737 (6th Cir. 1994) ("Because the Code provides no definition of what constitutes 'cause' under either Section 362(d) or Section 1112(b), courts must determine whether discretionary relief is appropriate on a case-by-case basis.") (citing *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991). A "bankruptcy court generally has broad discretion in granting relief from stay for cause under § 362(d)." *In re Edwards*, 454 B.R. 100, 107 (9th Cir. B.A.P. 2011).

18. Regardless of the type of "cause" asserted by the Landlords, once cause is established by the Landlords, the Debtor carries the burden of demonstrating that there is no such "cause" to terminate the automatic stay. *See, e.g.*, *In re Brown*, 78 B.R. 499, 502 (Bankr. S.D. Ohio 1987) ("When the creditor establishes this *prima facie* case, it is then the debtor's obligation to come forward with evidence that the creditor's position is adequately protected.").

> **i. The Debtor is not providing—and cannot provide—adequate protection to the Landlords; consequently, the Landlords are entitled to relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code.**

19. The Landlords are not adequately protected in the Leases because the Landlords, as lessors of unexpired Leases of nonresidential real property, are entitled to the immediate payment of all post-Petition Date rent and other charges currently due under the Leases, but the Debtor has failed or otherwise refused to make such payments. Section 365(d)(3) of the Bankruptcy Code requires the Debtor to "timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired leases of nonresidential real property, until such lease is assumed or rejected…." The legislative history of section 365(d)(3) of the Bankruptcy Code establishes the reason for this requirement:

> In this situation, the landlord is forced to provide current services -- the use of its property, utilities, security, and other services --without current payment. No other creditor is put in this position…The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

*See In re CVSA, Inc.*, 140 B.R. 116, 120 (Bankr. W.D. N.C. 1992), *citing* Legislative History, 130 Cong. Rec. at 8894-95 (daily ed. June 29, 1984) (remarks of Sen. Hatch)); *see also In re Pacific-Atlantic Trading Co.*, 27 F.3d 401, 404 (9th Cir. 1994) ("The plain and unconditional language of the statute demands that a trustee promptly pay the full amount of rent due under a nonresidential real property lease during the [120]-day period

pending assumption or rejection."). The Debtor has a duty, prior to assumption or rejection of a lease of nonresidential real property, to make timely payment of the full rent from available funds. *In re Telesphere Communications, Inc.*, 148 B.R. 525, 531 (Bankr. N.D. Ill. 1992).

20. The Debtor's failure or refusal to pay post-Petition Date rent is cause to lift the automatic stay to allow the Landlords to pursue state court remedies against the Debtor, particularly where the Debtor cannot provide adequate protection to the Landlords or where the Debtor does not give adequate assurance of future performance. *See*, *e.g.*, *In re Rocchio*, 125 B.R. 345, 347 (Bankr. D. R.I. 1991) (landlord of commercial property sought to lift automatic stay to continue eviction proceedings against tenant-debtor; court found that stay should be lifted because tenant-debtor owed pre-petition and post-petition rent, failed to pay post-petition rent, and failed to provide any evidence it would cure default or provide adequate protection).

21. The Leases have not yet been assumed or rejected by the Debtor, and therefore the Debtor is required to timely perform all its obligations under the Leases. The Debtor continues to have exclusive possession and use of the Leased Premises, but the Landlords are not being compensated for such possession and use and, as explained below, the Debtor is facing deepening administrative insolvency. The Debtor's failure or refusal to perform its obligations under the Leases as required by section 365(d)(3) of the Bankruptcy Code, coupled with the administrative insolvency of the Debtor's estate, results in the Landlords not being adequately protected in the Leases. Accordingly, relief

from the automatic stay should be granted under section 362(d)(1) of the Bankruptcy Code.

    **ii. The Debtor has no reasonable possibility of reorganizing; consequently, the Landlords are entitled to relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code.**

22. While most frequently addressed in the context of "bad faith" bankruptcy filings, a debtor's ability (or inability) to successfully reorganize is one of the many reasons considered by bankruptcy courts when deciding to grant relief from the automatic stay for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code. *See, e.g.*, *In re Duvar Apt., Inc.*, 205 B.R. 196 (9th Cir. B.A.P. 1996) (discussing debtor's ability to reorganize as a factor to consider when granting relief from the automatic stay); *In re 68 West 127 Street, LLC*, 285 B.R. 838 (Bankr. S.D. N.Y. 2002) (same); *In re Sparklet Devices, Inc.*, 154 B.R. 544 (Bankr. E.D. Mo. 1993) (same); *In re Willowood East Apartments of Indianapolis, Ltd.*, 113 B.R. 392 (Bankr. S.D. Ohio 1990) (discussing relief from the automatic stay for cause due to a debtor's inability to reorganize and indicating, generally, that relief from the automatic stay may be appropriate where the exclusivity period has expired and the debtor has been given a reasonable opportunity to propose a plan).

23. The docket in this chapter 11 case is reflective of a series of events that cast serious doubt on the Debtor's ability to successfully reorganize. Indeed, the *Debtor's Statement of Operations for Small Business* (Docket No. 15) casts doubt on whether the

Debtor has *any* ability to successfully reorganize and emerge from this chapter 11 case, as the Debtor had a net loss of $558,080 in 2018 and just $258,799 in gross profit.

24. The Debtor's likely inability to successfully reorganize is further confirmed by the projections provided to the Landlords at the interim cash collateral hearing held on February 27, 2019. These projections evidenced that even if the Debtor was operating—which it is not—the Debtor requires a significant cash infusion of not less than $275,000 in the form of post-Petition Date financing to even attempt a reorganization. The projected cash infusion does not account for any payment of required United States Trustee fees or any cost, fee, or expense contemplated under the Bankruptcy Code including, but not limited to, fees for counsel for the Debtor, all of which could be substantial.[2]

25. Additionally, the Debtor has not filed a motion to approve post-Petition Date financing and, upon information and belief, the Landlords are not aware of any commitment by any party or third party to provide post-Petition Date financing to the Debtor. This chapter 11 case has been pending for over one month and each day that this chapter 11 case continues, and each day the Landlords are unable to exercise their rights under the Leases and applicable law to mitigate their damages, the Debtor sinks deeper into administrative insolvency. Such inaction on the part of the Debtor, its officers, and

---

[2] The Landlords would further note that as of the date hereof, counsel that filed this chapter 11 case has not filed its retention application as contemplated under section 330 of the Bankruptcy Code. All rights of the Landlords to object to that retention application, when and if filed, as well as any compensation sought by counsel are preserved.

its directors is a breach of the duties owed to the Debtor's creditors, including the Landlords.[3]

26. As this Court is aware, the Debtor has not been granted authority to use cash collateral. Based on information and belief, as of the date of the interim cash collateral hearing, the Debtor only had $15,000 in cash.[4] The Debtor cannot meet the burdens imposed by the Bankruptcy Code for a successful reorganization under chapter 11. The Leased Premises are the Debtor's primary operation, and any assumption of the Leases will require the payment of not less than $67,001.36 in cure costs due and owing under the Leases as of the date of this Motion,[5] as required by section 365 of the Bankruptcy Code. The Debtor does not have the funds, or any ability to obtain the funds, to pay these required cure costs to the Landlords.

27. Due to the substantial arrearages under the Leases, which are increasing daily, and the Debtor's inability to obtain post-Petition Date financing and to successfully reorganize under chapter 11, the Landlords submit that "cause" exists warranting this Court granting the Landlords immediate relief from the automatic stay.

---

[3] All rights to assert claims against the officers and directors of the Debtors for breach of their duties should be preserved for the benefit of the estate and the creditors.

[4] The $15,000 of cash that was on hand as of the Petition Date was going to be, or has been, entirely consumed by the $19,000 of pre-Petition Date wages owed to the employees of the Debtor.

[5] This total represents $13,694.84 in amounts due and owing under the North High Lease and $53,306.52 in amounts due and owing under the Airport Plaza Lease and is exclusive of the Agreed Entries, which the Landlords expressly reserve.

> **B.　The Landlords are also entitled to relief from the stay pursuant to 11 U.S.C. § 362(d)(1) because of the Debtor's apparent lack of good faith in commencing this chapter 11 proceeding.**

28.　The Landlords are also entitled to relief from stay for "cause" due to the Debtor's apparent bad faith filing. *See*, *e.g.*, *In re Laguna* at 30 F.3d at 737 ("[B]ecause we see no substantive difference between the cause requirement for dismissal of a petition under Section 1112(b) and the cause requirement for relief from an automatic stay under Section 362(d)(1), it necessarily follows under this Court's cases that a lack of good faith constitutes "cause" for lifting an automatic stay."); *Carolin Corp. v. Miller*, 886 F.2d 693, 699 (4th Cir. 1989) ("§ 362(d)(1)'s 'for cause' language authorizes the court to determine whether, with respect to the interests of a creditor seeking relief, a debtor has sought the protection of the automatic stay in good faith"); *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986) ("The debtor's lack of good faith in filing a bankruptcy petition has often been used as cause for removing the automatic stay."); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071-72 (5th Cir. 1986) (lack of good faith constitutes "cause" for lifting the stay to permit foreclosure).

29.　Courts have also found bad faith when the underlying facts demonstrate that the debtor filed bankruptcy for purposes of delay or filed bankruptcy for a purpose unrelated to the restructuring of the debtor's debts. *See In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309 (Bankr. S.D.N.Y 2001) (court found that debtor acted in bad faith by filing for bankruptcy to delay foreclosure and consequently granted relief from stay for cause); *In re Wald*, 211 B.R. 359 (Bankr. D. N.D. 1997) (in granting stay relief motion for cause, court discussed bad faith factors, including filing for bankruptcy prior to foreclosure and

failure to present a feasible plan of reorganization). Furthermore, the existence of a more appropriate forum than the bankruptcy court is "cause" for relief under section 362(d)(1) of the Bankruptcy Code. *See, e.g.*, *In re Hohol,* 141 B.R. 293 (M.D. Pa. 1992); *In re Drexel Lambert Group, Inc.,* 113 B.R. 830 (S.D. N.Y. 1990); *In re Makarewicz,* 121 B.R. 262, 265 (S.D. Fla. 1990); *In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 218 (Bankr. D. Del. 1995).

30. There are numerous facts raising substantial questions regarding the Debtor's apparent "good faith" in filing this chapter 11 case. Most apparent is the Debtor's commencement of this chapter 11 case on the eve of the Landlord's execution of the Writs pursuant to the State Court Actions, without any apparent plan for exiting this chapter 11 case. The Landlords commenced the State Court Actions nearly four months ago and the State Court Actions were headed to partial resolution pursuant to the Writs, which would have allowed the Landlords to enter into the Leased Premises and mitigate their damages to the extent possible. Instead, the Debtor commenced this chapter 11 case one day after issuance of the Writs with minimal cash availability, no access to post-Petition Date financing, and no apparent plan or ability to successfully reorganize. As a result, the Debtor is sinking deeper into administrative insolvency and any recovery of Debtor's creditors, including the Landlords, has been harmed. Each of these facts challenge the "good faith" of the Debtor in filing this case.[6]

---

[6] All rights of the Landlord to pursue any claim as a result of the dismissal of this chapter 11 case and a finding that this chapter 11 case was filed in bad fait are preserved.

### IV. NOTICE

31. Notice of this Motion will be given to the following parties: (a) the Debtor; (b) counsel for the Debtor; (c) the United States Trustee; (d) the Debtor's twenty largest unsecured creditors; and (e) all parties requesting notice in this chapter 11 case. The Landlords submit that no additional notice is required or necessary under these circumstances. A separate certificate of service will be filed with this Court.

### V. CONCLUSION

**WHEREFORE**, the Landlords respectfully request that this Court enter an order substantially in the form attached hereto as Exhibit D granting the Landlords: (a) relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code with respect to the Leases, in order to allow the Landlords to exercise any and all of its rights and remedies under applicable non-bankruptcy law with respect to the Leases, including proceeding with the State Court Actions; and (b) such other relief as the Court deems just and appropriate.

[*Signature page follows*.]

Dated: March 15, 2019  Respectfully submitted,

**FROST BROWN TODD LLC**

*/s/ Ronald E. Gold*
Ronald E. Gold, Esq.
Ohio Bar No. 0061351
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone: 513-651-6800
Facsimile: 513-651-6981
Email: rgold@fbtlaw.com

*Counsel for Airport Plaza Limited and
EBP 2008 North High, LLC*

0108991.0717575  4839-1658-5611v3